1  **JASON I. SER**
   California State Bar No. 201816
2  FEDERAL DEFENDERS OF SAN DIEGO, INC.
   225 Broadway, Suite 900
3  San Diego, California 92101-5008
   Telephone: (619) 234-8467
4  jason_ser@fd.org

5  Attorneys for Mr. Gibbs

8               UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10              **(HONORABLE JEFFREY T. MILLER)**

11 | UNITED STATES OF AMERICA,     ) Case No.: 08cr1465-JM
   |                               )
12 |         Plaintiff,            ) Date:  June 6, 2008
   |                               ) Time:  11:00 a.m.
13 | v.                            )
   |                               )
14 | DEOSSY GENE GIBBS (2),        ) **STATEMENT OF FACTS AND POINTS AND**
   |                               ) **AUTHORITIES IN SUPPORT OF MOTIONS**
15 |                               )
   |         Defendant.            )
16 |_____|

### I.

### STATEMENT OF FACTS[1]

The government alleges that on April 10, 2008, Andres Tyreese Leggett entered the Pacific Trust Bank ("the bank"), located at 279 F Street, Chula Vista, California, and approached a teller window whereat bank employee Victoria Caliri was working. Upon arriving at Ms. Caliri's teller window, Mr. Leggett stated to her that his boss needed to speak with her and he handed her a cellular telephone. A male voice on the telephone then allegedly stated "I've been watching you closely. I know what you're doing. If you do what I tell you, I won't hurt you or your family." Thereafter, the bank teller returned the telephone to Mr. Leggett and began placing money from her top drawer into one of two blue merchant bags Mr. Leggett had carried

---

[1] The following statement of facts is based, in part, on materials received from the government. The facts alleged in these motions are subject to elaboration and/or modification at the time these motions are heard. Mr. Gibbs reserves the right to take a position contrary to the following statement of facts at the motions hearing and at trial.

1  into the bank. As the teller did this, Mr. Leggett told her that his boss only wanted hundreds. This statement
2  prompted her to remove the hundreds from a second lower drawer and place them, too, into the merchant
3  bags. When Mr. Leggett told her that was not enough money, she gave him fifty dollar bills as well. The
4  teller returned the now loaded merchant bags to Mr. Leggett and he left the bank.

5  As all of this occurred, other tellers and bank employees began sending and exchanging emails
6  alerting all to the alleged robbery being committed by Mr. Leggett. In addition to the intra-bank emails,
7  Chula Vista Police received a call from the bank of a bank robbery in progress. Somebody provided a
8  description of the person believed to be committing the robbery within the bank and explained that he wore
9  a white hat, green shirt, with a white long-sleeve shirt underneath the green one, and blue jeans. This
10 description, apparently, was broadcast by Chula Vista Police.

11 At the time Mr. Leggett departed the bank, an undercover Chula Vista Police Officer, Detective R.
12 Halstead, had been in the area of the bank. He saw somebody matching the description of the person
13 committing a robbery at the bank get into a gray Dodge Durango. The undercover officer followed the
14 Durango to the entrance ramp to northbound Interstate 805. Based upon radio communications by the
15 undercover officer, marked patrol cars belonging to the Chula Vista Police Department performed a "hot
16 stop" of the Durango and its occupants. Upon activating emergency equipment, which included red and blue
17 lights, the Durango immediately yielded to the shoulder and stopped. Several police officers approached
18 the vehicle with guns drawn and pointed at the vehicle's occupants. The officers ordered the driver and
19 passenger out of the vehicle.

20 Subsequent to the vehicle stop, police escorted Ms. Caliri to the location of the Durango. She
21 identified the passenger in the Durango as the person who appeared before her at the bank during the robbery
22 and stated "That's him." She claimed to be one-hundred percent sure of her identification. Ms. Caliri was
23 then taken back to the bank, where she was interviewed by law enforcement.

24 A second bank employee, Nohemi Languren, was also taken to the Durango's location to perform
25 an identification, but of the driver of the Durango. At the Durango's location, she identified the driver as
26 Mr. Gibbs. She also identified the passenger as the person who appeared by Ms. Caliri's teller station during
27 the robbery. Ms. Languren made various statements regarding alleged banking activity by Mr. Gibbs at the
28 bank.

A search of the Durango yielded a white fisherman's hat, which was found on the front driver's seat compartment, a black Boost Mobile cellular telephone, which was on the center console, and two blue bank bags, which were on the center console and right front passenger seat. Money was found within the bank bags.

Shortly after their arrest, various officials from the Chula Vista Police Department and Federal Bureau of Investigations began an investigation at the bank. Officers conducted interviews of the witnesses at the bank and collected fingerprints from the area near Ms. Caliri's teller window. Officers also collected surveillance footage from the bank's surveillance system.

Both Mr. Leggett and Mr. Gibbs were taken to the Chula Vista Police Department. Mr. Leggett was provided his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), which he waived, and made statements in response to interrogation. He stated that he had known Mr. Gibbs for ten years and worked odd jobs for him. He explained that Mr. Gibbs loaned him $200 two months before his arrest, at which time Mr. Gibbs told him he would have to do some work for him in exchange for the money. On the morning of their arrest, Mr. Gibbs called him and asked if he wanted to make some money. Mr. Gibbs picked him up at school and began driving south. Mr. Gibbs told him there would be consequences for what they were going to do. Mr. Gibbs eventually drove to the bank, whereat he gave Mr. Leggett a cellular telephone and two blue merchant bags. Mr. Gibbs told him that he would call him while he was in the bank and that he should give the bags and the telephone to the teller. Mr. Leggett recounted the statement of events above and then explained that during the vehicle stop, Mr. Gibbs allegedly stated "They got us Andres" and told somebody over a cellular telephone that he would not be home that night.

Mr. Gibbs, too, was provided his rights pursuant to Miranda. Mr. Gibbs purportedly waived his rights and made statements in response to interrogation. He stated he picked up his daughter's friend, Mr. Leggett, from ECC High School at approximately 10:00 a.m. He needed Mr. Leggett for a work appointment with a client in Chula Vista. Mr. Gibbs stopped at the bank, whereat Mr. Leggett went inside for a short period of time. After Mr. Leggett returned to the car, he left and was eventually stopped by police. At this time, Mr. Gibbs stated he thought he might need an attorney, but did not know. After a short break, the interrogation resumed at which time Mr. Gibbs explained that he and Mr. Leggett planned to rob the bank two days earlier. After discussing consequences for such an act, Mr. Leggett stated "Let's go do

1  it." Mr. Gibbs confirmed use of the telephone and merchant bags by Mr. Leggett at the bank. Mr. Gibbs
2  admitted being the voice on the telephone that spoke to the teller inside the bank. Mr. Gibbs explained he
3  stated "We've been watching you for awhile. He's not going t hurt anybody. Put the money in the bag. Do
4  you understand?" Mr. Gibbs recounted the vehicle stop and how he told his wife on the telephone that
5  things are not right and he would not be coming home right now. Mr. Gibbs allegedly signed a consent to
6  search the Boost Motorola cellular telephones found in the Durango.

7  On May 7, 2008, Mr. Gibbs was charged by a grand jury in an indictment with violating 18 U.S.C.
8  § 2113(a) - Bank Robbery, and 18 U.S.C. § 2 - Aiding and Abetting. He pled not guilty to the charges.

## II.

## MOTION TO PRESERVE AND INSPECT EVIDENCE

Mr. Gibbs requests the preservation of all physical evidence in this case. This includes any evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government (or its private contractors) in this case. See United States v. Riley, 189 F.3d 802, 806-808 (9th Cir.1999). This request includes, but is not limited to: (1) all physical evidence seized in the case including, but not limited to, the alleged cash taken from the bank, the merchant bags, the clothing and telephones found inside the Durango as well as any evidence seized from Mr. Gibbs or any third party; (2) all videotape and photographic evidence, including footage seized by officers from the bank; (3) the Dodge Durango; (4) the fingerprints taken from the bank as well as the results of any fingerprint analysis; (5) the defendant's personal effects; and, (6) all recorded communications made by federal, state, or local police officials with regard to the hot stop of the Durango or subsequent identifications made by various witnesses. Mr. Gibbs requests that government counsel be ordered to notify the agencies and private contractors with custody of such evidence be informed of the Court's preservation order.

Further, Mr. Gibbs requests an order granting defense counsel and/or their investigators access to the evidence for the purposes of investigation. Fed. R. Crim. P. 16(a)(1)(c). A proposed Order will be provided for the convenience of the Court.

Mr. Gibbs requests that the evidence in the case be preserved throughout the pendency of the case, including any appeals.

## III.

## MOTION TO COMPEL DISCOVERY

Mr. Gibbs moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir.), cert. denied, 493 U.S. 858 (1989).

(1) The Defendant's Statements. The Government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the Government intends to offer in evidence at trial; any response by the defendant to interrogation; any written summaries of the defendant's oral statements contained in the handwritten notes of the Government agent(s) as well as any reports containing such; any response to any Miranda warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A)-(B). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

(2) Arrest Reports, Notes and Dispatch Tapes. The defendant also specifically requests the Government to turn over all arrest reports, notes, dispatch or any other tapes that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A)-(B) and Brady v. Maryland, 373 U.S. 83 (1963). The Government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant. See Fed. R. Crim. P. 16(a)(1)(A)-(B), Fed. R. Crim. P. 26.2 and 12(h).

(3) Brady Material. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the Government's case. Under Brady, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

(4) <u>Any Information That May Result in a Lower Sentence Under The Guidelines</u>. The Government must produce this information under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). This request includes any cooperation or attempted cooperation by the defendant as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines. The defendant also requests any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant to any other application of the Guidelines.

(5) <u>The Defendant's Prior Record</u>. The defendant requests disclosure of his prior record. Fed. R. Crim. P. 16(a)(1)(D).

(6) <u>Any Proposed 404(b) Evidence</u>. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609. In addition, under Rule 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. The defendant requests that such notice be given three (3) weeks before trial in order to give the defense time to adequately investigate and prepare for trial.

(7) <u>Evidence Seized</u>. The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(E).

(8) <u>Tangible Objects</u>. The defendant requests the opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the Government's case-in-chief or were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E).

(9) <u>Evidence of Bias or Motive to Lie</u>. The defendant requests any evidence that any prospective Government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or his testimony.

(10) <u>Impeachment Evidence</u>. The defendant requests any evidence that any prospective Government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant. <u>See</u> Fed R. Evid. 608, 609 and 613; <u>Brady v. Maryland</u>, <u>supra</u>.

1   (11) <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

(12) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>. The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

(13) <u>Witness Addresses</u>. The defendant requests the name and last known address of each prospective Government witness. The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be called as a Government witness.

(14) <u>Name of Witnesses Favorable to the Defendant</u>. The defendant requests the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him who was unsure of his identity, or participation in the crime charged.

(15) <u>Statements Relevant to the Defense</u>. The defendant requests disclosure of any statement relevant to any possible defense or contention that he might assert.

(16) <u>Jencks Act Material</u>. The defendant requests production in advance of trial of all material, including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid the possibility of delay at the request of defendant to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1). <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963). In <u>United States v. Boshell</u>, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act.

(17) <u>Giglio Information</u>. Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any Government witnesses, in exchange

1 for their testimony in this case, and all other information which could arguably be used for the impeachment
2 of any Government witnesses.

3     (18) <u>Agreements Between the Government and Witnesses</u>. The defendant requests discovery
4 regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future
5 compensation, or any other kind of agreement or understanding, including any implicit understanding
6 relating to criminal or civil income tax, forfeiture or fine liability, between any prospective Government
7 witness and the Government (federal, state and/or local). This request also includes any discussion with a
8 potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain,
9 even if no bargain was made, or the advice not followed.

10     (19) <u>Informants and Cooperating Witnesses</u>. The defendant requests disclosure of the names and
11 addresses of all informants or cooperating witnesses used or to be used in this case, and in particular,
12 disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime
13 charged against Mr. Gibbs. The Government must disclose the informant's identity and location, as well
14 as disclose the existence of any other percipient witness unknown or unknowable to the defense. <u>Roviaro</u>
15 <u>v. United States</u>, 353 U.S. 53, 61-62 (1957). The Government must disclose any information derived from
16 informants which exculpates or tends to exculpate the defendant.

17     (20) <u>Bias by Informants or Cooperating Witnesses</u>. The defendant requests disclosure of any
18 information indicating bias on the part of any informant or cooperating witness. <u>Giglio v. United States</u>, 405
19 U.S. 150 (1972). Such information would include what, if any, inducements, favors, payments or threats
20 were made to the witness to secure cooperation with the authorities.

21     (21) <u>Government Examination of Law Enforcement Personnel Files</u>. Mr. Gibbs requests that the
22 Government examine the personnel files and any other files within its custody, care or control, or which
23 could be obtained by the government, for all testifying witnesses, including testifying officers. Mr. Gibbs
24 requests that these files be reviewed by the Government attorney for evidence of perjurious conduct or other
25 like dishonesty, or any other material relevant to impeachment, or any information that is exculpatory,
26 pursuant to its duty under <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991). The obligation to examine
27 files arises by virtue of the defense making a demand for their review: the Ninth Circuit in <u>Henthorn</u>
28 remanded for <u>in camera</u> review of the agents' files because the government failed to examine the files of

1 agents who testified at trial. This Court should therefore order the Government to review all such files for
2 all testifying witnesses and turn over any material relevant to impeachment or that is exculpatory to Mr.
3 Gibbs prior to trial. Mr. Gibbs specifically requests that the prosecutor, not the law enforcement officers,
4 review the files in this case. The duty to review the files, under <u>Henthorn</u>, should be the prosecutor's. Only
5 the prosecutor has the legal knowledge and ethical obligations to fully comply with this request.

6      (22) <u>Expert Summaries</u>. Defendant requests written summaries of all expert testimony that the
7 government intends to present under Federal Rules of Evidence 702, 703 or 705 during its case in chief,
8 written summaries of the bases for each expert's opinion, and written summaries of the experts'
9 qualifications. Fed. R. Crim. P. 16(a)(1)(G). This request includes, but is not limited to, fingerprint expert
10 testimony.

11      (23) <u>Residual Request</u>. Mr. Gibbs intends by this discovery motion to invoke his rights to discovery
12 to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws
13 of the United States. This request specifically includes all subsections of Rule 16. Mr. Gibbs requests that
14 the Government provide him and his attorney with the above requested material sufficiently in advance of
15 trial to avoid unnecessary delay prior to cross-examination.

## IV.

## **MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

Defense counsel requests leave to file further motions and notices of defense based upon information gained in the discovery process as well as defense investigation. This includes, at a minimum, motions to suppress evidence pursuant to the Fourth Amendment as a result of an unconstitutional stop and/or prolonged detention and/or warrantless search, and suppress statements pursuant to the Fifth Amendment.

## V.

## **CONCLUSION**

For these and all the foregoing reasons, the defendant, Mr. Gibbs, respectfully requests that this Court grant his motions and grant any and all other relief deemed proper and fair.

Respectfully submitted,

DATED: May 23, 2008

 */s/ Jason I. Ser*
JASON I. SER
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Gibbs
E-mail: jason_ser@fd.org